1

2

3

4

5

6

7

8                                 UNITED STATES DISTRICT COURT

9                               SOUTHERN DISTRICT OF CALIFORNIA

10

11   TASSO KOUMOULIS, ROBERT EARL, and       )   Case No. 09cv1973-DMS (BLM)
     CHRISTOS HATZIS, on behalf of           )
12   themselves and all others similarly      )
     situated,                                )   **ORDER GRANTING:**
13                                            )
                          Plaintiffs,         )   **(1) CLASS CERTIFICATION;**
14                                            )
     v.                                       )   **(2) FINAL APPROVAL OF CLASS**
15                                            )   **SETTLEMENT;**
                                              )
16   LPL FINANCIAL CORPORATION, a             )   **(3) REQUEST FOR ATTORNEYS'**
     California Corporation,                  )   **FEES AND COSTS; and**
17                                            )
                          Defendant.          )   **(4) REQUEST FOR AN**
18                                            )   **ENHANCEMENT AWARD.**
                                              )
19                                            )
                                              )   [ECF No. 37]
20   ─────────────────────────────────────   )

21          Currently before the Court is the parties' Joint Motion for Final Approval of Settlement. ECF

22   No. 37.  For the reasons set forth below, the Court **GRANTS** the motion.

23                                        **DISCUSSION**

24          When the parties reach a settlement prior to class certification, the court must "peruse

25   the proposed compromise to ratify both the propriety of the certification and the fairness of the

26   settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  This requires the court

27   to assess both whether a class exists and whether the proposed settlement is "'fundamentally

28   fair, adequate, and reasonable.'"  Id. (citation omitted).  Accordingly, in the present case, the

Court will examine the propriety of class certification, the fairness of the settlement agreement, and the appropriateness of the requested attorneys' fees and enhancement award for the named Plaintiffs.

## I.     Class Certification

A plaintiff seeking a Rule 23(b)(3) class certification must satisfy the prerequisites of both Rule 23(a) and Rule 23(b)(3).  In the present case, the Court preliminarily certified the class in its July 14, 2010 Order, concluding that the proposed class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).  ECF No. 34 at 3.  The Court has reviewed those elements again and adopts its prior analysis.  Accordingly, the Court finds that Plaintiffs have satisfied the requirements of both Rule 23(a) and Rule 23(b)(3) and **GRANTS** certification of the class for the purpose of settlement.

## II.    The Settlement

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'"  Staton, 327 F.3d at 959 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  To make this determination, the court must consider a number of factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

Id. (citation omitted).  Additionally, "the settlement may not be the product of collusion among the negotiating parties."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

A.    The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial

Class Counsel and counsel for Defendant both represent that each of the three above-mentioned factors weigh in favor of settlement. Although Plaintiffs "believe strongly in the merits of their case," they also acknowledge that "the outcome was far from certain given the state of

1   the law and the facts of the case." Mem. of P. & A. in Supp. of Settlement at 9.   Counsel for

2   Defendant similarly states his belief that "LPL had many meritorious procedural and substantive

3   defenses to the claims, [but] there is uncertainty inherent in any litigation" and settlement

4   removes that uncertainty. Markun Decl. ¶ 4. Moreover, whereas individual litigation would likely

5   be rife with "significant legal and factual hurdles," and "would tax private and judicial resources

6   over a period of years," settlement at this juncture "provides to all  Members, regardless of their

7   means, substantial relief promptly and efficiently." Mem. of P. & A. in Supp. of Settlement at 9;

8   Markun Decl. ¶ 4.   Finally, despite Plaintiffs' belief that "this lawsuit is maintainable as a class

9   action," Plaintiffs concede that "there are risks associated with the class certification issue," and

10  "[t]he uncertainty of whether a contested class certification motion would have been granted

11  warrants settlement now." Mem. of P. & A. in Supp. of Settlement at 10.

12          In light of these admitted weaknesses and potential pitfalls, the Court agrees with counsel

13  that the actual recovery through settlement confers substantial benefits on the class that

14  outweigh the potential recovery through full adjudication.   The Court therefore finds that each

15  of these three factors weighs in favor of granting final approval.

16          B.   The amount offered in settlement

17          Defendant LPL agreed to pay "an all-inclusive, maximum settlement amount of $470,000,"

18  from which each Class Member "shall be eligible to recover his or her pro-rated share of the Class

19  Member Distribution Amount based upon his or her individual Compensable Work Weeks." Mem.

20  of P. & A. in Supp. of Settlement at 3-4.   Although Class Counsel did not indicate what the

21  maximum potentially recoverable amount would be if the instant case was to proceed to trial,

22  the Court is able to assess the reasonableness of the amount offered in settlement without such

23  a comparison point.   Notably, even if the potential recovery far exceeds the amount offered in

24  settlement, such a disparity is not dispositive because "it is well-settled law that a cash

25  settlement amounting to only a fraction of the potential recovery will not per se render the

26  settlement inadequate or unfair." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San

27  Francisco, 688 F.2d 615, 628 (9th Cir. 1982) (citations omitted).

28          Here, Class Counsel and counsel for Defendant state that the settlement "is reasonable

1  given the claims asserted and the uncertainties in the outcomes under the law . . . ." Mem. of

2  P. & A. in Supp. of Settlement at 10; Markun Decl. ¶ 4.  These representations are significant

3  because "[t]he recommendations of plaintiffs' counsel should be given a presumption of

4  reasonableness." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)

5  (quoting Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Moreover, prior to

6  reaching a settlement on April 23, 2010, Class Counsel and counsel for Defendant "engaged in

7  extensive negotiation, including an exchange of substantial information."  Mem. of P. & A. in

8  Supp. of Settlement at 3; Markun Decl. ¶ 2.  The Court agrees that this "considerable exchange

9  of information," in addition to both attorneys' expertise, made the parties "well-equipped to

10 negotiate at arm's length, and, ultimately, reach a reasonable settlement of the overtime claims."

11 Mem. of P. & A. in Supp. of Settlement at 3.   The Court is further convinced of the

12 reasonableness and adequacy of the settlement because "zero (0) Class Members have

13 expressed any form of opposition to the Settlement," and any Class Members who excluded

14 themselves believing that their claims have a greater value "preserved the right to pursue [their]

15 individual claim[s] seeking that potential greater payout." Mem. of P. & A. in Supp. of Settlement

16 at 11-12.

17      The Court finds that the settlement amount is in the range of reasonableness given the

18 probability of lengthy litigation in the absence of a settlement, the risk that the employees would

19 not have been able to succeed at trial, and the risk that a jury could have awarded less than the

20 settlement amount.  Accordingly, the Court finds the amount offered in settlement to the Class

21 Members weighs in favor of granting final approval of the Settlement.

22      C. The extent of discovery completed, and the stage of the proceedings

23      In the class action settlement context, "'formal discovery is not a necessary ticket to the

24 bargaining table' where the parties have sufficient information to make an informed decision

25 about settlement." In re Mego, 213 F.3d at 459 (quoting Linney v. Cellular Alaska P'ship, 151

26 F.3d 1234, 1239 (9th Cir. 1998)).  Here, prior to reaching a settlement, "the Parties exchanged

27 substantial information and conducted informal investigation," such that "Class Counsel fully

28 understood LPL's wage-paying practices and the composition of the Class." Mem. of P. & A. in

1  Supp. of Settlement at 11; see also Markun Decl. ¶¶ 2-3.  The Court agrees that Class Counsel

2  had enough information to negotiate a fair settlement and this factor therefore weighs in favor

3  of granting final approval.

4          D.  The experience and views of counsel

5          Class Counsel, who has been in practice for more than thirty years and negotiated "[s]ome

6  of [the] largest class action overtime wage-hour settlements in California history, as well as many

7  smaller ones," expressly "supports the Settlement as fair, reasonable, and adequate, and in the

8  best interest of the Class as a whole."  Mem. of P. & A. in Supp. of Settlement at 11; Thierman

9  Decl. Ex. A.  Counsel for Defendant also "strongly support[s] the Settlement of this action."

10  Markun Decl. ¶ 4.  Accordingly, the Court finds that this factor weighs in favor of granting final

11  approval.

12          E.  The reaction of the class members to the proposed settlement

13          Rust Consulting, Inc. ("Rust"), the entity hired to disseminate the Class Notice in the

14  present case, successfully delivered notices to 148 of the 151 Class Members, or 98% of the

15  putative class.  Zeleke Decl. ¶¶ 1, 3, 8, 10.  As of October 22, 2010, a total of ninety-six (96)

16  Class Members had chosen to participate in the Settlement and submit Claim Forms.  Zeleke

17  Suppl. Decl. ¶ 4.  Twenty-four (24) Class Members submitted incomplete forms, however, as of

18  October 22, 2010, sixteen (16) had resolved the deficiencies and the remaining eight (8) were

19  still working on them.  Id.  One (1) Class Member chose to opt out and six (6) Class Members

20  submitted disputed Claim Forms which were ultimately deemed to be without merit.  Id.

21  Ultimately, 64% of the class chose to participate in the Settlement, and the Class Members

22  collectively claimed 17,270.74 work weeks out of a total of 20,908.02 work weeks for the Class

23  (approximately 83%).  Id.  The timely postmarked Claims Forms therefore constitute a potential

24  payout of approximately $295,500.00, with an average payment per Class Member of $3,078.13.

25  Id.  Notably, as of October 22, 2010, zero (0) Class Members had objected to the Settlement.

26  Id. at ¶ 5.  See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y.

27  2000) ("If only a small number of objections are received, that fact can be viewed as indicative

28  of the adequacy  of the settlement."); Boyd, 485 F. Supp. at 624 (acknowledging that

1  approximately sixteen percent of the class filed some opposition to the settlement, but "find[ing]

2  persuasive the fact that eighty-four percent of the class has filed no opposition").   In light of

3  these facts, the Court finds that the overall reaction of the Class Members weighs in favor of

4  granting final approval.

5      F.   Collusion among the negotiating parties

6  The collusion inquiry centers on the possibility that the agreement is the result of either

7  overt misconduct by the negotiators or improper incentives of certain class members at the

8  expense of other members of the class.  See Staton, 327 F.3d at 960.  Here, there is no evidence

9  of overt misconduct so the Court will focus its inquiry on the aspects of the settlement that lend

10  themselves to self-interested action: the enhancement award for the named Plaintiffs and the

11  attorneys' fees.

12  Although Class Counsel initially requested $50,000 enhancement awards for each of the

13  three Class Representatives, the Court declined to approve such an admittedly "large" award.

14  ECF No. 27 at 6, 9; ECF No. 27-1 at 14; see also ECF No. 32.  Accordingly, the Notice sent to

15  Class Members stated that the Class Representatives would receive an enhancement award of

16  "up to $10,000." ECF No. 33 at 7.  None of the Class Members objected to this proposed amount

17  and, as discussed in more detail below, the Court finds this revised amount is not the result of

18  collusion.

19  The requested attorneys' fees are not the result of collusion.  Plaintiffs may simultaneously

20  negotiate the merits and attorneys' fees.  Staton, 327 F.3d at 971.  In the present case, Plaintiffs

21  seek the Court's approval of attorneys' fees in the total amount of $117,500, which equals 25%

22  of the total settlement of $470,000.  Mem. of P. & A. in Supp. of Fees at 0-1.  As discussed in

23  more detail below, the Court finds the recovery of attorneys' fees sought by Class Counsel to be

24  reasonable.

25  **III.   Attorneys' Fees and Costs for Class Counsel**

26  The Settlement Agreement provides that Class Counsel may recover no more than

27  $10,000 in litigation costs and $117,500 in attorneys' fees.  ECF No. 27 at 9-10; ECF No. 27-1

28  at 14; ECF No. 33 at 4, 7.  Parties to a class action may appropriately negotiate the payment of

1  attorneys' fees and costs in conjunction with the settlement of the action itself.  See Evans v. Jeff

2  D., 475 U.S. 717, 733-35 (1986).

3          With respect to the litigation costs, Class Counsel incurred $4,178.85 in costs as of

4  October 11, 2010, and anticipated another $500 in costs for attendance at the Final Approval

5  Hearing, bringing the total costs to $4,678.85.  Mem. of P. & A. in Supp. of Fees at 1, 13-14;

6  Thierman Decl. Ex. D.  Class Counsel states that these costs include "travel, photocopies,

7  computer research, filing fees, messenger service and postage."  Mem. of P. & A. in Supp. of

8  Fees at 13.  Because the Settlement Agreement provides for costs up to $10,000 (ECF No. 27-1

9  at 14; ECF No. 33 at 7), the Court notes that the costs incurred by Class Counsel were modest.

10  Moreover, the Court finds that the costs Class Counsel incurred were necessary to properly

11  litigate the case and the costs are the type commonly approved by courts.  See, e.g., Harris v.

12  Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994); In re Immune Response Sec. Litig., 497 F. Supp.

13  2d 1166, 1177-78 (S.D. Cal. 2007); In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1365-

14  72 (N.D. Cal. 1996).  The Court therefore finds the award of litigation costs in the amount of

15  $4,678.85 to be reasonable.

16          With respect to the attorneys' fees, Class Counsel seeks a total sum of $117,500, which

17  equals 25% of the total settlement of $470,000.  Mem. of P. & A. in Supp. of Fees at 0.  Notably,

18  the Ninth Circuit has established a 25% "benchmark" for common fund cases.  In re Coordinated

19  Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997).  This

20  "'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special

21  circumstances indicate that the percentage recovery would be either too small or too large in

22  light of the hours devoted to the case or other relevant factors.'"  Torrisi v. Tucson Elec. Power

23  Co., 8 F.3d 1370, 1376 (9th Cir. 1993) (quoting Six Mexican Workers v. Ariz. Citrus Growers, 904

24  F.2d 1301, 1311 (9th Cir. 1990)).  However, regardless of whether the court uses the percentage

25  approach or the lodestar method, the critical inquiry is whether the "fees and expenses ultimately

26  awarded [are] reasonable in relation to what the plaintiffs recovered."  Powers v. Eichen, 229

27  F.3d 1249, 1258 (9th Cir. 2000).  In determining the reasonableness of an award, the Ninth

28  Circuit has identified the following relevant factors: (1) the results achieved; (2) the risks of

litigation; (3) the skill required and the quality of work; (4) the awards made in similar cases; and (5) the contingent nature of the fee and the burdens carried by class counsel.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).  The Court addresses each of these factors in turn.

First, the results achieved in this case are favorable to the Class Members.  The average payment per Class Member is estimated to be over $3,000 and the highest award for a claimant in the Class who worked for the entire class period is estimated to be more than $6,000.  Mem. of P. & A. in Support of Fees at 8; Zeleke Suppl. Decl. ¶ 4.  Moreover, the existence of only one "opt out" and the complete lack of objectors indicates the Class Members' satisfaction with the Settlement.  Mem. of P. & A. in Support of Fees at 8; Zeleke Suppl. Decl. ¶¶ 4-5.  Second, as detailed above through the averments of both Class Counsel and counsel for Defendant, the risks of litigation were real and substantial.  Third, the complexity of wage and hour class action cases, coupled with the experience of Class Counsel, weighs in favor of approving Class Counsel's fee award.  Fourth, the request for attorneys' fees in the amount of 25% of the common fund is not outside the normal range for fee awards in similar cases.[1]  Fifth, in the absence of recovery for the Plaintiffs, Class Counsel would have received nothing.  Mem. of P. & A. in Supp. of Fees at 11.  Accordingly, the Court finds that the requested attorneys' fees and costs are reasonable.

**IV.     Enhancement Award for Class Representatives**

In evaluating the enhancement award to a class representative, a court should consider all "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation.'"  Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In the present case, the Class Representatives initially requested an enhancement award

---

[1]   Additionally, Class Counsel stated that his request for 25% of the gross potential settlement value "represents a multiplier of only 1.73 from the fair market value for [his] services."  Thierman Decl. ¶ 22.  "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  Vizcaino, 290 F.3d at 1050.

in the amount of $50,000 each.  ECF No. 27 at 6, 9.  The Court declined to approve, even preliminarily, the requested enhancement.  See ECF No. 32.  As a result of the Court's ruling, the Notice sent to the potential Class Members included a statement that the Class Representatives could receive "up to $10,000" each.  ECF No. 33 at 4, 7.

In their enhancement request, the Class Representatives explained that they have protected the interests of the class by maintaining this class action for the past year and argued that their actions have benefitted the class.  They also expressed concern "that they have been subject to pervasive covert discrimination as whistleblowers in the industry" and "fear that they may be silently blackballed by this litigation."  ECF No. 27 at 5-6, 16-17.  However, the Class Representatives do not state what specific actions they took to further the litigation.  For example, there is no indication that the Class Representatives were deposed or otherwise personally involved in discovery, nor did they participate in the Early Neutral Evaluation Conference.  See, e.g., Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008) ("Given . . . the utter lack of evidence demonstrating the quality of plaintiff's representative service, the court may be reticent to ultimately approve the parties' proposed settlement."); Apparicio v. Radioshack Corp., No. CV 08-1145, 2009 WL 1490560, at *2 (C.D. Cal. May 21, 2009) ("Plaintiffs have provided no detail on the amount of time and effort expended by the named plaintiffs, or any risk they incurred.").  Moreover, the Class Representatives do not provide any facts to support their concern about discrimination or blackballing.  See Staton, 327 F.3d at 977 (court should consider *reasonable* fears of workplace retaliation).  Finally, the Court notes that a $10,000 enhancement would constitute 2.13% of the $470,000 settlement and a $30,000 enhancement (the total requested enhancement to all three Class Representatives) would constitute 6.38% of the settlement.  See Sandoval v. Tharaldson Emp. Mgmt., Inc., No. EDCV 08-482, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (lowering the named plaintiff's enhancement award to a sum constituting 1% of the gross settlement and citing cases in which enhancement awards constituting less than 1% of the settlement amount were approved).

While no Class Member has objected to the $10,000 enhancement awards, the Court finds the requested amount to be excessive given the facts of this case.  The Court agrees that an

enhancement award is appropriate in this case given the length of time the litigation has been pending, the value provided to the Class Members, and the possibility that the Class Representatives may experience difficulties in their future employment, but the Court finds that the appropriate amount is $6,000 per person.  Accordingly, the Court finds an enhancement award of $6,000 per Class Representative (for a total enhancement award of $18,000) to be fair and reasonable under the circumstances.

## CONCLUSION

For the foregoing reasons, the Court: (1) **GRANTS** certification of the applicable class; (2) **GRANTS** final approval of the settlement; (3) **GRANTS** the request for award of attorneys' fees and costs and **AWARDS** Class Counsel litigation costs in the amount of **$4,678.85** and attorneys' fees in the amount of **$117,500.00**; and (4) **GRANTS** the request for an enhancement award and **AWARDS** each named Plaintiff, Tasso Koumoulis, Robert Earl, and Christos Hatzis, a class representative enhancement award of **$6,000**.

**IT IS SO ORDERED.**

DATED:  November 19, 2010

BARBARA L. MAJOR
United States Magistrate Judge